```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND

BRUCE ALLEN LILLER, et al    :

     Plaintiffs              :

     vs.                     :
ROBERT KAUFFMAN, et al       :
                                Case No. MJG 02-CV-3390
     Defendants and          :  (Consolidated w/MJG 02-CV-3391)
     Third-Party Plaintiffs

     vs.                     :

ROGER LEE HELBIG             :

     Third-Party Defendant   :

                             :

               * * * * * * * * *

     Deposition of JOSEPH KAUFFMAN, taken on
Wednesday, December 17, 2003, commencing at
approximately 11:14 a.m., at the law offices of Michael
Cohen, 213 Washington Street, Cumberland, Maryland,
21502, before Christina D. Pratt, Notary Public.


                    * * * * *
```

Page 2

```
APPEARANCES:

     ARNOLD F. PHILLIPS, ESQUIRE

     Attorney at Law

     P. O. Box 537

     McHenry, Maryland  21541

          on behalf of Bruce Liller, Michael Liller

          and Mary & Dwight Liller as Guardians for

          Michael Liller


     KATHLEEN M. BUSTRAAN, ESQUIRE

     Lord & Whip

     36 South Charles Street, 10th Floor

     Baltimore, Maryland  21201

          on behalf of Robert Kauffman & Joseph Kauffman



ALSO PRESENT:

     Robert Kauffman
```

Page 3

```
                    JOSEPH KAUFFMAN

having affirmed that he would tell the truth, the
whole truth, and nothing but the truth, testified as
follows:
               EXAMINATION BY MR. PHILLIPS:
     Q.   Mr. Kauffman, I'm Arnold Phillips, and you
heard the instructions I gave to your son.  Basically,
wait till I finish a question before you answer.  Give
verbal answers so we have a good record of this, and
basically tell the truth, and I'm sure you'll do that.
Attorneys do a lot of depositions and this.  You've
probably never done them before, but I'll just ask you
to relax and tell us what happened.
          First let me get you to state your name and
address for the record.
     A.   Joe Kauffman, 6146 Lincoln Highway, Bedford,
PA.
     Q.   You're the owner of Kauffman Metals?
     A.   Yes.
     Q.   Is Kauffman Metals incorporated or how's that
association, the business association?
     A.   It's an S-Corp.
```


EXHIBIT B

Page 4

```
     Q.   It's an S-Corp.  Okay, and who are the owners
of the S-Corp?
     A.   My wife and I.
     Q.   How long have you been in business?
     A.   Three and a half years.
     Q.   What's the nature of the business?
     A.   Building materials -- selling building
materials and then we do some pole buildings and house
roofs and stuff like that.
     Q.   Do you do this in the states of Pennsylvania
and Maryland?
     A.   In Pennsylvania mostly.
     Q.   Do you operate in Maryland at all?
     A.   Very little.
     Q.   Very little?  Have you constructed pole
buildings or metal buildings in Maryland?
     A.   We've constructed one building -- well,
actually, three in Maryland.
     Q.   And where were those buildings located?
     A.   Two of them in Frostburg -- three, all three
of them in Frostburg.
     Q.   When you construct these buildings, does it
```

Page 13

```
 1    A.  I don't know.
 2    Q.  Do you have multiple insurance policies for
 3  your vehicles?
 4    A.  Explain.
 5    Q.  Do you have more than one insurance policy
 6  covering the different six vehicles?
 7    A.  No.
 8    Q.  It's just one insurance policy covers all the
 9  vehicles?
10    A.  Yes.
11    Q.  Do you know if the premiums for that insurance
12  policy are paid by you or paid by the business?
13    A.  I don't know.
14    Q.  Do you have any idea what the policy limits on
15  your insurance policy is?
16    A.  No.
17    Q.  Do you have any idea whether your insurance
18  policy complies with Pennsylvania, the laws for the
19  state of Pennsylvania?
20    A.  Yes.
21    Q.  How do you know that it complies with the laws
22  of the state of Pennsylvania?
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 14

```
 1    A.  Because we do our documentation and
 2  everything.  We try to keep everything legal.
 3    Q.  Who's your insurance agent?
 4    A.  Reed Werts & Roden.
 5    Q.  Where are they located?
 6    A.  Bedford.
 7    Q.  The truck that was involved in the accident,
 8  did you have that truck repaired after the accident?
 9    A.  Yes.
10    Q.  Who repaired it?
11    A.  Martin's Welding.
12    Q.  Do you know what they did to repair it, what
13  work was performed on it?
14    A.  Yes.
15    Q.  What work was performed on it?
16    A.  Replaced the sheetmetal on the bed.
17    Q.  How much did it cost?
18    A.  I don't know.
19    Q.  Going back to Miki Taylor, is she your office
20  manager?  What's her title with your company?
21    A.  She's an accountant.
22    Q.  She's just the accountant?  How much time does
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 15

```
 1  she spend working for Kauffman Metals?
 2    A.  I don't know.
 3    Q.  Do you have an office?  Does Kauffman Metals
 4  have an office?
 5    A.  Yes.
 6    Q.  Does she work out of the office?
 7    A.  Some.
 8    Q.  Do you work out of the office?
 9    A.  Yes.
10    Q.  How many days out of the week would you
11  estimate she's there?
12    A.  Sometimes five days a week.
13    Q.  She'd know all the information about your
14  insurance policies, the bills, the vehicles you owned?
15    A.  Yes.
16    Q.  Do you have any type of umbrella policy?
17    A.  I'm not sure.
18    Q.  Who makes the business decisions for Kauffman
19  Metals?
20    A.  I do.
21    Q.  Did you ever go to the scene of the accident
22  after the accident?
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 16

```
 1    A.  Yes.
 2    Q.  What was your purpose for going there?
 3    A.  My son called me the evening of the accident
 4  and said the trailer was totaled because of the
 5  accident, and I didn't believe it, because it takes
 6  quite something to total a trailer like that,
 7  especially a small car.  And as soon as I came, I went
 8  up right away to see what actually happened, and there
 9  was no question.
10    Q.  Where's the location of the trailer now?
11    A.  At my place.
12    Q.  How'd you get it back to your place?
13    A.  We hauled it back.
14    Q.  Did you -- how did you haul it back?
15    A.  On a trailer.
16    Q.  And you haven't tried to repair that trailer?
17    A.  No.
18    Q.  How did your son describe the accident to you?
19    A.  He was pulling out of a driveway after dark
20  and the nature of the driveway, you have to -- it's
21  impossible to pull out without blocking the road, and
22  after dark, you can see all the headlights coming up
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 17

1  over the hill easier than -- you can see better than in
2  the daytime to see if something's coming. And he
3  pulled out and before he knew it, while he was out on
4  the road, this car came just flying like crazy and hit
5  the trailer. He couldn't do anything about it.
6      Q. I take it since family members live there in
7  that area, you're very familiar with that driveway and
8  that section of road?
9      A. We lived there for about 12 years.
10     Q. Would you call it a dangerous driveway?
11     A. Not with sensible drivers.
12     Q. Is it a blind driveway for people coming in
13 certain directions?
14     A. Not with sensible -- not with driving within
15 the speed limit. To come flying the way they did,
16 yeah, it's a blind spot.
17     Q. How far from down the road in either direction
18 can you spot where the driveway is?
19     A. I don't know.
20     Q. Who else has discussed the accident with you
21 other than your attorneys?
22     A. I don't know.

Page 18

1      Q. Did your son's wife say anything to you about
2  it?
3      A. Not much.
4      Q. Did your -- the people who are living at the
5  residence say anything to you about it?
6      A. I'm sure.
7      Q. Do you recall what they said to you?
8      A. No.
9      Q. Do you perform any maintenance or inspections
10 on your vehicles yourself?
11     A. Minor.
12     Q. Minor, such as?
13     A. Head lamp replacement.
14     Q. And the vehicle that was involved in this
15 accident, have you ever made any repairs to that?
16     A. I don't know.
17     Q. The trailer that was involved in the accident,
18 have you ever made any repairs of that?
19     A. I don't know.
20     Q. Do you have any mental or physical conditions
21 which impair your memory?
22     A. No.

Page 19

1      Q. Are you under the influence of any drugs or
2  alcohol?
3      A. No.
4      Q. Have you been under any psychiatric care?
5         MS. BUSTRAAN: Objection.
6      A. No.
7      Q. Other than Miki Taylor, who else works in the
8  office of Kauffman Metals?
9      A. My son, Bob.
10     Q. Is there anybody who is charged with the
11 duties of inspecting the vehicles and keeping the
12 vehicles current and legal?
13     A. Yes.
14     Q. Who's that?
15     A. Gerald.
16     Q. Who?
17     A. My son, Gerald.
18     Q. Did you have any discussions with Gerald about
19 the truck and the trailer that were involved in the
20 accident?
21     A. Yes.
22     Q. What were those discussions?

Page 20

1      A. I don't know.
2      Q. Do you know what the subject of those
3  discussions were?
4      A. Just the nature of the vehicle, or the
5  accident. I can't remember what we talked about.
6      Q. Then you'd have no personal knowledge whether
7  or not that vehicle was, you know, in good repair or
8  properly licensed?
9      A. Yes.
10     Q. What type of lights were on the trailer?
11     A. Tail lights, side marker lights, and back-up
12 lights.
13     Q. Did your company or you make any modifications
14 to the trailer and the lighting?
15     A. Yes.
16     Q. What were those modifications?
17     A. We added lights on the original trailer. When
18 we got the trailer new, we put more lights on it.
19     Q. How many more lights did you put on it?
20     A. I don't know.
21     Q. Would Gerald have been the one who did this
22 work?

Page 21

```
1    A.  I don't know.
2    Q.  Does your son Robert drive that truck in the
3  course and duty of his employment with Kauffman Metals?
4    A.  Yes.
5    Q.  Who else drives that truck, or who else drove
6  that truck around the time of the accident?
7    A.  Gerald.
8    Q.  Was this truck primarily used by one son or
9  the other?
10   A.  Mostly Gerald.
11   Q.  Mostly Gerald?  And do you know why your son,
12 Robert, was using the truck that day?
13   A.  He was doing a favor for his friend.
14   Q.  Did you authorize his use of that vehicle?
15   A.  Yes.
16   Q.  Were you aware of what he was doing that day
17 with the vehicle?
18   A.  Not totally.
19   Q.  What was your understanding of his purpose for
20 using that vehicle?
21   A.  I just gave him the vehicle to use for
22 whatever he wanted to use it that day.
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 22

```
1    Q.  Do your sons own other vehicles, or do you own
2  them all?
3    A.  I didn't understand your question.
4    Q.  Do your sons own other vehicles, personal
5  vehicles of their own?
6    A.  Bob does.
7    Q.  How about Robert?
8    A.  That's Bob.
9    Q.  Okay, sorry.  Is it typical for Robert to use
10 that vehicle for personal use?
11   A.  Yes.
12   Q.  Where was the trailer located prior to the
13 accident?  Was the trailer located at Kauffman Metals
14 prior to the accident, or was it located in Swanton
15 with the Bobcat?
16   A.  When he took the truck, I'm sure he took the
17 trailer from the same spot in PA.
18   Q.  And that was from the location of Kauffman
19 Metals?
20   A.  Yes.
21   Q.  Would you have been present at the time that
22 he left?
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 23

```
1    A.  I don't know.
2    Q.  You don't know.  Would you have been aware
3  that he took the trailer?
4    A.  Yes.
5    Q.  Would you have been aware that he was taking
6  the trailer to pick up the company Bobcat?
7    A.  No.
8    Q.  Is the Bobcat owned by you or by the company?
9    A.  I don't know.
10   Q.  Were you aware of your son's speeding tickets?
11       MS. BUSTRAAN:  Objection.
12   A.  Some.
13   Q.  Some; not all of them?
14   A.  I don't know.
15   Q.  Are you aware of any accidents your son had
16 been in at any other time?
17       MS. BUSTRAAN:  Objection.
18   A.  Accident as what?
19   Q.  Vehicle accidents.
20   A.  Yes.
21   Q.  When were those accidents?
22   A.  I don't know.
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 24

```
1    Q.  What happened in the other accident?
2        MS. BUSTRAAN:  Objection.
3    A.  As I recall, he was hauling a load of hay and
4  the load wasn't -- the hay was -- I'm not sure.  I
5  honestly, I don't know what the deal was, but he did
6  have a mishap on the road.
7    Q.  Did it involve another vehicle?
8    A.  No.
9    Q.  Did it cause damage to the vehicle that he was
10 in?
11   A.  No.
12   Q.  Was he working for you at the time of this
13 other accident?
14       MS. BUSTRAAN:  Objection.
15   A.  No.
16   Q.  Have you ever been sued --
17       MS. BUSTRAAN:  Objection.
18   Q.  -- other than this lawsuit?
19   A.  No.
20   Q.  Have there been any other automotive accidents
21 with Kauffman Metals in the 3-1/2 years since it's been
22 operated?
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414

**Page 25**

    MS. BUSTRAAN: Objection.
 A. Yes.
 Q. Who was the driver and what happened in the accident?
    MS. BUSTRAAN: Objection.
 A. Deer.
 Q. Who was the driver?
 A. I'm not sure.
 Q. Do you know if it was Robert?
 A. No.
 Q. It wasn't Robert?
 A. I don't know.
 Q. You don't know? Would Mike or Gerald know this information?
 A. Gerald would. The reason I don't know is because Bob and Gerald were in the truck. I don't know who was driving. That's why I'm --
 Q. Okay. That's really what I'm looking for.
    ROBERT KAUFFMAN: Can I say anything now?
    MS. BUSTRAAN: No.
 Q. Are you aware what drivers are permitted to drive your vehicles?

**Page 26**

 A. Yes.
 Q. And what employees, family members, do you allow to drive the vehicles?
 A. Anyone with a valid drivers license in the family.
 Q. Who are those persons?
 A. Myself and my sons, my wife.
 Q. Does Kauffman Metals have any employees that aren't part of the family?
 A. Yes.
 Q. Who are those employees?
 A. Bob.
 Q. Bob who?
 A. Kauffman.
 Q. Now, actually, I'm asking -- go ahead. Who else?
 A. Bob's the only one that's employed. The other boys get 1099s.
 Q. Who are the other boys? How many do you have?
 A. Three that drive.
 Q. Do the boys generally drive specific vehicles, or do they, you know, use different vehicles?

**Page 27**

 A. Different vehicles.
 Q. Do you generally give them permission when they take out a vehicle?
 A. It's common understanding.
 Q. Well, if your son, any of your sons wanted to use a truck, would they notify you that they're using it?
 A. In the business?
 Q. Yes.
 A. No.
 Q. If they were using it for personal reasons, would they notify you that they're using it?
 A. Sometimes.
 Q. And when did you first become aware that your son Robert was going to pick up the Bobcat?
 A. I don't know. I don't know that I even knew.
 Q. Had your son not picked up the Bobcat, would you have sent -- would you have paid somebody to pick it up?
 A. I don't know.
 Q. How did the Bobcat get to its location the date of the accident in Swanton?

**Page 28**

 A. I don't know.
    MS. BUSTRAAN: How did it get to Oakland or back? I'm sorry.
 Q. How did it get to Swanton?
 A. I don't know.
 Q. Would it have been one of your sons driving it?
 A. Likely.
 Q. What vehicles do you use to haul the Bobcat?
 A. One of the trucks.
 Q. Have you used all the trucks?
 A. No.
 Q. How many of them would you use? How many do you have?
 A. Three of them.
 Q. You have three of them? And those are the three that would have a hook-up for a flatbed?
 A. Yes.
 Q. How many flatbeds do you have?
 A. Three.
 Q. Are they all similar in size and length?
 A. They're different lengths.

Word for Word Reporting
Swanton, MD 21561
301-387-8414

Page 29

1     Q. Different lengths, and what -- you probably
2 don't know what -- do you know what the lengths are?
3       MS. BUSTRAAN: I'm going to pose an objection.
4 Is there a reason why this is all relevant? I'm just
5 trying to figure that out.
6       MR. PHILLIPS: Well, I want to see what the
7 lengths of the other trailers are as opposed to this
8 trailer, and my question is, did they use the best
9 trailer for the job; could they have used a shorter
10 trailer.
11       MS. BUSTRAAN: I don't see how that's relevant
12 to any issue of the lawsuit, but you may answer, if you
13 know.
14     Q. Do you have trailers that are shorter than the
15 one that was involved in the accident?
16     A. No.
17     Q. Are they all longer than the one that's
18 involved in the accident?
19     A. Yes.
20     Q. Okay.
21     A. With those hookups, all those are longer.
22     Q. Would the trailer that was used, is that the

Page 30

1 one that was commonly used to transport the Bobcat?
2     A. Yes.
3     Q. How's that Bobcat secured on the trailer?
4     A. Chains.
5     Q. Who have you talked to about the circumstances
6 of this, the accident and the lawsuit?
7     A. I don't know. I didn't write it down.
8     Q. Do you know anybody that you've talked to?
9 You've talked to your son, Robert. Would that be
10 correct?
11     A. Yes.
12     Q. You've talked to your son, Gerald. Would that
13 be correct?
14     A. Yes.
15     Q. You've talked to Robert's wife. Would that be
16 correct?
17     A. Probably.
18     Q. Did you talk to Miki Taylor, your accountant?
19     A. Yes.
20     Q. And did you talk to any of the police that
21 were involved in the accident?
22     A. Yes.

Page 31

1     Q. Is there anybody else that you might recall
2 that you've talked to about this, other than your
3 attorneys?
4     A. If I think long enough, I can come up with my
5 dad and my mom and my brother-in-law and my sister, and
6 I might be leaving some out. I'm not sure who all.
7     Q. Do you recall what Robert's wife said about
8 the accident?
9     A. No.
10     Q. Do you know of anybody who investigated the
11 accident?
12     A. I know that it was investigated, but I don't
13 know the firm.
14     Q. Did you review any of the accident reports?
15     A. Yes.
16     Q. When did you view them?
17     A. I don't know.
18     Q. How did they come into your possession?
19     A. I don't know.
20     Q. Did your son give them to you?
21     A. I don't know.
22     Q. Did you take any pictures or make any notes of

Page 32

1 the accident or any of the facts surrounding the
2 accident?
3     A. No.
4     Q. Were you aware that your son had glasses?
5     A. Yes.
6     Q. When was the last time you saw him use
7 glasses?
8     A. I don't know.
9     Q. Did you ever see him use his glasses to drive?
10     A. No.
11     Q. Do you have any idea what type of condition
12 caused him to wear glasses?
13     A. Yes.
14     Q. What was that condition?
15     A. Headaches.
16     Q. Have you ever had similar headaches?
17       MS. BUSTRAAN: Objection.
18     A. I don't know.
19     Q. How long have you been wearing glasses?
20     A. Two years.
21     Q. Are you nearsighted or farsighted?
22       MS. BUSTRAAN: Objection. You can answer, if

Page 33

```
1   you know.
2       A.  Well, I know -- I don't know which, what the
3   right term is.  I have to hold something up here to --
4   if I don't have glasses, I have to hold it way out, so
5   I'm not sure.  Is that near or far?
6       Q.  Do you use your glasses for driving?
7       A.  Yes.
8       Q.  Do any of your other sons have glasses?
9       A.  No.
10          MR. PHILLIPS:  Okay, I believe that's about
11  all that I have.
12          MS. BUSTRAAN:  I don't have any questions.  We
13  will also reserve the right to read and sign.
14          (Whereupon, at 11:55 a.m., the taking of the
15  deposition was concluded.)
16
17          _____
18          Joseph Kauffman
19
20          * * * * * * *
21
22
```

Word for Word Reporting
Swanton, MD 21561
301-387-8414