IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

|  |  |
|---|---|
| BRUCE ALLEN LILLER, et al. * | |
| Plaintiff * | Case No.: MJG 02-CV-3390 |
| * | (Consolidated with MJG 02-CV-3391) |
| v. * | |
| ROBERT KAUFFMAN, et al. * | |
| Defendants and * | |
| Third-Party Plaintiffs * | |
| v. * | |
| ROGER LEE HELBIG * | |
| Third-Party Defendant * | |

\* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION IN LIMINE TO PRECLUDE TESTIMONY
OF CHARLES M. COHEN, PH.D.**

Defendants, Robert Kauffman and Joseph Kauffman, by their undersigned counsel, pursuant to Rules 104 and 702 of the Rules of Evidence, file the following Memorandum of Law in support of their Motion to Preclude Testimony of Charles M. Cohen, Ph.D., and state:

**FACTUAL BACKGROUND**

This case arises from a motor vehicle collision in Oakland, Maryland. Jurisdiction in this Court is claimed pursuant to 28 U.S.C. § 1332.

The Plaintiffs allege that, on April 17, 2002, they were passengers in a vehicle being driven by Roger Lee Helbig and which was travelling west on Paul

Friend Road. Defendant Robert Kauffman was, at the same time, the driver of a pick-up truck with an attached flatbed trailer and was attempting to pull his vehicle and trailer into a driveway on Paul Friend Road. The truck and trailer were owned by Joseph Kauffman. Joseph Kauffman had previously given permission for Robert Kauffman to use the vehicles.

Plaintiffs have designated Charles M. Cohen, Ph.D., as an expert witness who will provide testimony on their behalf at the trial of this case. Dr. Cohen's deposition was taken on December 15, 2003 and December 18, 2003. Dr. Cohen is expected to offer opinions in this case with respect to the need for future medical treatment and the costs associated with this treatment on behalf of both Plaintiffs (Plaintiffs' Rule 26(a)(2) Disclosure, attached hereto as Exhibit A). For the reasons described below, the testimony of Dr. Cohen would not assist the trier of fact in this case to understand the evidence or to determine facts at issue, and therefore his testimony as an expert witness at the trial of this case should be precluded.

## ARGUMENT

Pursuant to Rule 702 of the Federal Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education," may testify with respect to scientific, technical, or other specialized knowledge, if that knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. In determining whether to admit such testimony, the court must ensure that any and all such testimony is not only relevant, but reliable. Daubert v.

2

Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S. Ct. 2786 (1993). An expert's opinion must have a reliable basis in the knowledge and experience of his discipline. Id. at 592. Daubert's general holding, requiring that the court, as gatekeeper, review proposed evidence for its relevancy and reliability, extends not only to testimony based on scientific knowledge, but to testimony based on technical and other specialized knowledge as well. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167 (1998).

## I. Standard of Review

Rule 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, . . . In making its determination it is not bound by the rules of evidence except those with respect to privileges." These matters are to be determined by the Court based upon a preponderance of proof. Bourjaily v. United States, 483 U.S. 171, 175-176, 107 S. Ct. 2775 (1987).

## II. Reliability

Dr. Cohen is a psychologist licensed in Pennsylvania, who, along with Jeroen Walstra,[1] provides consulting services to attorneys (Curriculum Vitae of Charles M. Cohen, Ph.D., attached hereto as Exhibit B; Deposition of Jeroen Walstra, p. 9). In addition, Dr. Cohen is a certified rehabilitation counselor, and

---

[1] Defendants have filed, simultaneously with this Motion, a Motion in Limine to Preclude Testimony by Mr. Walstra as well.

3

has been previously employed as Supervisor of Psychological and Rehabilitation Services for the Pittsburgh Board of Education, and has held other similar employment (Curriculum Vitae of Charles M. Cohen, Ph.D., attached hereto as Exhibit B). Dr. Cohen has been offered by the Plaintiffs to testify with respect to their need, respectively, for future medical treatment and the costs associated with that treatment.

### A. Bruce Liller

Dr. Cohen evaluated Bruce Liller on August 27, 2003 (report of Charles M. Cohen, Ph.D., attached hereto as Exhibit D). In his report, Dr. Cohen summarizes information provided to him by the Plaintiffs concerning Mr. Liller's current medical condition, and in addition summarized the results of a mental status examination which he performed on Mr. Liller (report of Charles M. Cohen, Ph.D., attached hereto as Exhibit D).

Dr. Cohen concludes that "[s]upervisors of construction typically earn approximately $23.77 per hour nationally" (Report of Charles M. Cohen, Ph.D., attached hereto as Exhibit D). However, prior to the accident at issue in this case, Mr. Liller earned only $15.00 per hour (Report of Charles M. Cohen, Ph.D., p. 2, attached hereto as Exhibit D).[2] Despite the fact that Bruce Liller never earned $23.77 per hour prior to the accident at issue in this case, and in fact had earned

---

[2] Mr. Liller earned $15.00 per hour in his employment immediately prior to this accident (Report of Charles M. Cohen, Ph.D., p. 4, attached hereto as Exhibit D). Mr. Liller earned $18.00 in a position held before that employment (Report of Charles M. Cohen, Ph.D., p. 4, attached hereto as Exhibit D).

4

only $15.00 per hour, Dr. Cohen valued Mr. Liller's earnings capacity at $23.77 per hour (Report of Charles M. Cohen, Ph.D., p. 4, attached hereto as Exhibit D).[3]

### B. Michael Liller

Dr. Cohen evaluated Michael Liller on August 27, 2003 (Report of Charles M. Cohen, Ph.D., p. 1, attached hereto as Exhibit E). Dr. Cohen reviewed medical records concerning Mr. Liller, and performed a mental status examination (Report of Charles M. Cohen, Ph.D., attached hereto as Exhibit E). In addition, Dr. Cohen administered an MMPI-II test designed to assess whether Mr. Liller suffers from personality or emotional disorders (Report of Charles M. Cohen, Ph.D., attached hereto as Exhibit E).

As a result of his assessment, Dr. Cohen concluded that Mr. Liller's earnings capacity decreased from a rate of $12.00 per hour prior to the accident at issue in this case to a rate of $8.00 per hour (Report of Charles M. Cohen, Ph.D., p. 6, attached hereto as Exhibit E).[4]

In addition, Dr. Cohen opines that Michael Liller is in need of additional mental health treatment (Report of Charles M. Cohen, Ph.D., p. 6, attached hereto as Exhibit E). According to Dr. Cohen, Mr. Liller requires a full

---

[3] Based on Dr. Cohen's conclusion that Mr. Liller's earnings capacity was $23.77 per hour, a figure which apparently represents the national average of wages for supervisors of construction, Mr. Walstra prepared a report projecting Mr. Liller's future expected wage loss. As is noted above, Defendants have filed, simultaneously with this Motion, a Motion to Preclude Mr. Walstra's testimony as well.

[4] It is interesting to note that, in evaluating Michael Liller, Dr. Cohen used Mr. Liller's demonstrated previous wage of $12.00, rather than a national average for similar workers. It is unclear why Dr. Cohen relied upon Michael Liller's actual previous earnings, while simultaneously relying upon the national average for earnings in his evaluation of Bruce Liller. This inconsistency in the method used by Dr. Cohen to arrive at his conclusions, which also form the basis for the opinions expressed in this case by Mr. Walstra, is further suggestive of the unreliability of both Dr. Cohen's and Mr. Walstra's testimony.

neuropsychological assessment and psychiatric treatment for his depression and anxiety, including psychiatric visits, psychotherapy, cognitive retraining, and psychotropic medications (Report of Charles M. Cohen, Ph.D., p. 6, attached hereto as Exhibit E).  However, Dr. Cohen is not a physician (Deposition of Charles M. Cohen, Ph.D., p. 33).  There is no evidence that any physician has recommended or prescribed the medical treatment indicated in Dr. Cohen's report (Deposition of Charles M. Cohen, Ph.D., p. 49; Deposition of Jeroen Walstra, p. 42-43).  In addition, Dr. Cohen testified that, because he is not a psychiatrist, he does not hold any opinions with respect to the appropriate kind of psychotropic medication to be prescribed for Mr. Liller (Deposition of Charles M. Cohen, Ph.D., p. 48).[5]  In addition, Dr. Cohen does not know whether Mr. Liller is currently receiving medical or psychological treatment, and does not know whether Mr. Liller is currently taking any psychotropic medications (Deposition of Charles M. Cohen, Ph.D., p. 48-50).

In addition, Dr. Cohen does not believe that Michael Liller is at maximum medical improvement following the injuries he allegedly sustained as a result of the accident at issue in this case (Deposition of Charles M. Cohen, Ph.D., p. 53). If so, it certainly seems premature to reach any conclusions with respect to Mr. Liller's projected future earnings losses, as, if Mr. Liller improves, his future

---

[5] If one follows Dr. Cohen's testimony to its logical next step, because Dr. Cohen is not a psychiatrist, he is similarly not qualified to prescribe psychotropic medication or related treatment either.  He should not be permitted to express opinions about a therapy he would not be permitted to administer.

6

earnings would be expected to improve as well. Dr. Cohen's opinions with respect to Michael Liller's earnings losses are therefore without foundation.

Further, although Dr. Cohen expresses opinions concerning necessary psychological care for Mr. Liller, Dr. Cohen was unable to testify that Mr. Liller's depression and anxiety were caused by the accident at issue in this case (Deposition of Charles M. Cohen, Ph.D., p. 54-55). If Plaintiff is unable to establish that, to a reasonable degree of medical probability, Mr. Liller's depression and anxiety are causally related to the accident, any of Dr. Cohen's opinions with respect to the necessity of future medical or psychological treatment for Mr. Liller are not relevant to the issues in this case and should therefore be excluded.

### C. Reliability

To determine whether expert testimony is admissible under Rule 702, the Court must examine whether the reasoning or methodology underlying the expert's proffered opinion is reliable, meaning it is supported by adequate validation to render it trustworthy. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). The testimony must rest upon a reliable foundation and must be relevant. Kumho Tire, 526 U.S. at 141. As a gatekeeper of proffered testimony, the Court must keep in mind that expert witnesses have the potential to be "both powerful and quite misleading." Daubert, 509 U.S. at 595. Where the expert testimony has a greater potential to mislead than to enlighten, that evidence may be properly excluded. Westberry, 178 F.3d at 261.

The expert's testimony must be accompanied by a sufficient factual foundation before it may be submitted to a jury. Elcock, 233 F.3d at 754; Gumbs v. International Harvester, Inc., 718 F.2d 88, 98 (3rd Cir. 1983). Absent a factual foundation, such testimony is merely a "castle made of sand." Benjamin, 820 F.2d at 643.

An expert should not depend on fictional or random data when rendering an opinion about the quantum of economic harm in a plaintiff's case. Elcock, 233 F.3d at 756. Permitting an expert witness to offer an opinion unsupported by factual foundation would significantly increase the risk of misleading a jury and confusing the issues in this case. Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 144 (4th Cir. 1994).

The opinions expressed by Dr. Cohen with respect to both of the Plaintiffs in this case are not reliable, and are not supported by the facts in evidence. In his report concerning Bruce Liller, Dr. Cohen relies upon the national average for wages in comparable employment, notwithstanding the fact that Mr. Liller has never demonstrated the ability to earn that wage, and in fact earned substantially less prior to the accident which is at issue in this case. With respect to Michael Liller, Dr. Cohen, who is not a physician, opines that Mr. Liller will require significant medical treatment in the future, despite the fact that no physician has suggested or prescribed that treatment, and notwithstanding the fact that Dr. Cohen admitted he is unable to state, to a reasonable degree of medical probability, that Mr. Liller's emotional problems were caused by the accident.

The opinions expressed by Dr. Cohen, and which further form the basis for the opinions expressed by Mr. Walstra, therefore have a great potential to mislead the jury in this case. For that reason, Dr. Cohen should be precluded from testifying as an expert witness at the trial of this case.

## CONCLUSION

The opinions offered by Dr. Cohen in this case are not reliable and are not supported by the facts in evidence, and therefore will not aid the jury to understand or resolve the facts at issue in this case. Accordingly, Defendants, Robert Kauffman and Joseph Kauffman, request that this Court preclude the testimony of Charles M. Cohen, Ph.D. at the trial of this case.

*/s/ Kathleen M. Bustraan*
Kathleen M. Bustraan
(Bar No. 24417)
Jennifer S. Lubinski
(Bar No. 25160)
Lord & Whip, P.A.
Charles Center South, 10th Floor
36 S. Charles Street
Baltimore, Maryland 21201
(410) 539-5881

Attorneys for Defendants

313279