**Charles Cohen Ph.D.**
**Pa. Psych. License PS-001631**

Standard Life Bldg., 345 Fourth Avenue, Suite 906
Pittsburgh, PA 15222
Tel: (412) 434-0855
Fax: (412) 434-1326

## PSYCHOOOGICAL/VOCATIONAL EVALUATION

Name:              Bruce Liller

Date of Birth:     3/9/75

Age:               28

Referral Source:   Arnold F. Phillips, Esquire

Date of Evaluation: 8/27/03

Date of Report:    9/15/03

### Instruments Administered

Mental Status Examination
Interview

### Reports Review

Dr. Drapkin's report dated 4/17/03 indicates, " His problem now is persistent pain in his low back. He has no real leg pain. He does get some occasional discomfort in his abdomen.---At this point in time, the patient has reached maximum medical improvement. I do not expect him to improve whatsoever. He sustained a serious permanent impairment to his lumbar spine as the result of his injury. He will never be able to compete in any type of competitive sports again. He will be permanently hampered with respect to doing any type of lifting or any type of heavy work of a permanent nature. With respect to the patient's impairment to his spine as a result of his injury of April 17, 2002, he has sustained a 50% permanent impairment to his spine or body as a whole."

### Interview and Observations

Bruce arrived for evaluation on time, driven by his mother. Bruce does drive but has difficulty riding in a car for more than two hours at a time due to back pain. A female friend also accompanied him today as well as his brother who was also being evaluated.

EXHIBIT D



DEPOSITION EXHIBIT 4
Dr. Cohen
12/18/03

1

09/17/03

Bruce is a tall, thin, neatly and cleanly attired young man who held his hands around is stomach during the one-hour examination. He moved around in his chair and appeared to be in physical discomfort. Bruce's eye contact was good and his speech was spontaneous. He answered questions with short, direct answers. He seldom smiled.

Bruce reports that he is a 1993 graduate of Southern Garret High School where he was an average student. During high school he worked in his father's construction business and learned to be a carpenter. From 1996 to 2000 he worked in South Carolina for Southern Structures Inc. He was at first a carpenter, supervisor and superintendent of residential construction. In his last job he managed the work of a number of construction crews, ordered materials and supervised construction workers. The hours were long always far in excess of a forty-hour workweek. Incidental lifting and carrying was a part of this job. In this job he earned $18 per hour. For the last six months he was a self-employed sub-contractor while in South Carolina. He did not have enough working capital to make a success of this business. He returned home to work for his father in the family construction business as a working foreman earning $15 per hour. He was eventually hoping to go into the construction business for himself.

Bruce was hurt in an accident of 4/17/02. He continues to have severe residuals associated with the accident. He has constant pain in his back and hip that is exacerbated with activity. His back is sore every day. He can no longer wear a tool belt or do strenuous physical activity. He is prescribed a muscle relaxer and Ibuprofen 800mgs, twice a day, which only partially relieves his symptoms. He must take frequent breaks. He has stomach pain and Diarrhea most days. He says, "I live on Pepto –Bismal". He must take frequent bathroom breaks. He believes his immune system has been affected by the injury to his spleen. He therefore attempts to be as clean as possible and washes his hands as many as 20 times during the day in order to avoid infection. He feels ill many days but does not miss work very often.

After the accident, Bruce was off work for six months. In 12/02 he began working increasingly more hours and was back working full-time in two months. He returned to his same job as a foreman for his father's construction company earning $15 per hour. However, due to his physical limitations, a laborer, earning $8 per hour was hired. This laborer performs physical activities that Bruce cannot perform such as carrying his tool belt and lifting.

Prior to the accident Bruce considered himself to be a happy person who was never treated for any mental health problems. Since the accident Bruce recognizes that he has had a difficult time adjusting to the reduction is his physical health and feels depressed about his condition. He is more irritable towards people due to his back pain. He laments that he cannot perform physically as he has done before. He used to enjoy water-skiing and golf, activities he can no longer perform. Now he uses the

12/15/03

play station. He continues to have friends and will occasionally go fishing. He currently does not have a girlfriend but is still interested in sexual activity He believes that he is not performing sexually as well as he had, previous to the accident.

Bruce appreciates and needs the support his family provides for him. His mother makes doctors appointments and helps him in other ways like helping him look for a house. His parents co-sign for loans for him. In addition, he realizes that by working for his father he is able to take more breaks and has accommodations in his work situation, which would not be allowed by others employers. He does not have to work over forty hours per week.

Bruce is currently sharing a house with his youngest brother, Joshua. They pay a friend, Patty (this is not a romantic relationship) $50 per month to do their cleaning and cooking. Their mother goes shopping for them. The brother does the physical chores around the house such as taking out the trash and lawn care. All of this support allows Bruce to rest his back, which makes him available for work on a daily basis.

## Mental Status Examination

Bruce is physically as I have previous described. He did appear to be in mild discomfort during the examination holding his hands around his stomach and shifting in his chair. He admits to depression associated with his inability to function physically, as he was able to do before the accident. His eye contact was good and his speech was spontaneous. He has gained weight, he believes due to inactivity. He has difficulty sleeping due to pain. He complains that he feels extremely tired after working eight hours even though he is not performing heavy physical labor, as he once was able to do. If he were required to work more than eight hours he would not be able to function the next day. His affect was mildly blunted and his mood was mildly depressed. He denied any hallucinations or illusions, He stream of thought was normal and he was goal directed and coherent. He denied suicidal, homicidal or paranoid ideas. His abstract reasoning and general fund of information were in the normal range. He was oriented to person, place and time and all his memory functions were normal. He was able to recall all three items I asked him to remember for five minutes. He was able to perform simple arithmetic as well as serial sevens and was able to recall six digits forward and five digits backwards. He complains of irritability and snapping at people due to back and stomach pain. His judgement was fair.

09/17/03

## Diagnosis

AXIS I   Adjustment Disorder with depressed mood
AXIS II  None
AXIS III Defer to Physicians
AXIS IV Vocational problems
AXIS V  CURRENT: 65

## Summary, Conclusions and Recommendations

Bruce Liller is a 28-year-old man with a high school education. He has work experience both as a carpenter and as a supervisor and superintendent of construction, earning $18 per hour in South Carolina. The national average for such jobs is $23.77 per hour. Just prior to the accident he was working for his father as a construction foreman earning $15 per hour. He continues to have residuals from the accident related to back and hip pain as well as digestive problems. He is experiencing some mild depression, which is typical of persons who have had a negative change in their physically abilities. He is provided special physical and emotional support by his family which allows him to function as well as he can under the circumstances. He takes more breaks than would be allowed under normal competitive employment circumstances. His father has hired a laborer to provide support for him at the work site. Supervisors of construction typically earn approximately $23.77 per hour nationally.  This is roughly consistent with Bruce's wage of $15 per hour plus the $8 per hour wage provided to the laborer who helps him. Although Bruce was hoping to eventually go into business for himself, his earnings capacity in that pursuit is too tentative to currently estimate. In his current condition and need for emotional and physical support from his family, Bruce would be unable to move to a different area or employer and work as a supervisor or superintendent of construction. Supervisors and superintendents of construction are considered to be light jobs, requiring walking and lifting 20 lbs. occasionally and 10 lbs. frequently. There a no jobs in the construction industry where lifting is not required. In addition, these supervisory positions require working long hours in excess of the normal workweek. The reason Bruce is able to maintain employment as a foreman in his father's business is because of the special supports provided to him. Even with these supports he struggles to get through a forty-hour workweek.

## OPINION

**It is therefore my opinion, based on a reasonable degree of professional certainty, that Bruce Liller, if not for the accident, had the earnings capacity of $23.77 per hour working and a construction supervisor or superintendent. Since the accident his earnings capacity has been reduced to $15 per hour**

09/17/03

working in a family construction business. He has past and future losses associated with this loss of earning capacity.

*[signature: Charles Cohen]*

Charles Cohen Ph.D.
Psychologist/Vocational Expert