**Charles Cohen Ph.D.**
**Pa. Psych. License PS-001631**

Standard Life Bldg., 345 Fourth Avenue, Suite 906
Pittsburgh, PA 15222
Tel: (412) 434-0855
Fax: (412) 434-1326

## PSYCHOLOGICAL/VOCATIONAL EVALUATION

Name:               Michael Liller

Date of Birth:      4/26/77

Age:                26

Referral Source:    Arnold F. Phillips, Esquire

Date of Evaluation: 8/27/03

Date of Report:     9/5/03

### Instruments Administered

Minnesota Multiphasic Personality Inventory - 2 (MMPI-2)
Mental Status Evaluation
Vocational Interview

### Reports Review

Dr. Petrick's report dated 6/5/02 indicates, " By contrast, he demonstrates mild to moderate limitations across measure of immediate memory span and letter/number sequencing.---With respect to memory functions (WMS-III), Michael demonstrates severe impairment.--- He has difficulty with retention.---Formal assessment of affective disturbance (WBI-II) suggests just mild severity.---Thus the clinical profile obtained is most consistent with acquired traumatic brain injury. Other medical history is really non-contributory. Diagnostically this is a cognitive disorder not otherwise specified secondary to traumatic brain injury. Hopefully, the severity of the deficits will remit with time and spontaneous recovery. This young man is quite fortunate to be doing as well as he is. This was a severe traumatic brain injury.

Dr. Petrick's Addendum dated 6/24/02 indicates, " There was related executive dysfunction.--- He was noted to have significant memory deficit.--- This young man would clearly benefit from outpatient cognitive rehabilitation efforts.---His mood will need to be monitored. Behavior will need to be monitored as well.

CARE program discharge summary dated 8/7/03 indicates, " The patient was discharged to home with his parents. (Improvements in functioning are noted)--- RECOMMENDATIONS: 1. The patient demonstrated good adjustment throughout his length of stay. He should

1




09/17/03

continue to be monitored by his family, friends and physician for any increase of depressive symptoms.--- Patient should no be supervising others or working independently for at least 6 weeks, then his supervisor should assess for 1 week to determine if he is performing his duties correctly and can be made independent."

### Interview and Observations

Michael arrived on time, driven to the examination by his mother. Michael does drive in his local area. He expresses concern about his driving and describes himself as a very cautious driver since he was involved in the accident on 4/17/02. His brother, who evaluated separately today, as well as a friend of his brothers, also accompanied him.

Michael is a medium height, good looking, neatly and cleanly attired young man who showed no signs of being in physical distress. He spoke in a very soft, monotone voice and there was little spontaneity but he did answer all questions asked fully. He never smiled. His speech was mildly slowed. It took him about twice as along to complete the MMPI as it does normally.

Michael is a 1995 graduate of Southern Garrett High School where he was an average student in a college preparatory curriculum. He Went to West Liberty College for one semester but then dropped out because he didn't know what he wanted to be.

During high school Michael worked with his father who owns a home construction company where he learned to be a carpenter. After college he continued to work for his father. His skills improved and at the time of the accident he was a working Forman running a crew of four to five men. He was earning at the rate of $12 per hour, without benefits but with overtime and bonuses he was earning approximately $600 per week. He eventually planned to take over the family construction business when his father retired.

Michael was hurt on 4/17/02 He had a head injury as well as physical injuries. He went though some cognitive rehabilitation. Based on the schedule provided by his doctors he began to return slowly to work in 10/02. He has gradually increased the number of hours that he works to the point that he is now working full time. However, he has found that with his cognitive impairments he is unable to act as a foreman. He is unable to make decisions, or tell others what to do the way he used to. If given specific directions he is able to complete a carpentry task he believes at a reasonable good level of competence. He is now paid at the rate of $300 per week regardless of how long he works. This translates to $8 per hour which is the rate that his father normally pays laborers.

Prior to the accident, Michael describes himself as a "happy" young man who enjoyed activities with his friends such as going swimming, going to amusement parks and working out. He had lots of girlfriends. He was never treated by a mental health professional. This is a history of brain damage. He had received two DUI's, and was no probation for this behavior.

- Page 2

09/17/03

He went to AA meetings frequently and reports that he was "clean and sober" for eight months prior to the accident.

Since the accident his life has changed drastically. He feels depressed all of the time. He feels frightened and anxious about his future. His mind races and he has trouble controlling his thoughts. He is more tentative regarding driving. He is much less social than previously and has problems making decisions both at work and is his everyday life. He does not have a girlfriend. He was hoping that when he got back to work that he would be happy again but this has not occurred. However, He does get some relief from his depression and anxiety when he works. He also has a preacher friend with whom he confides. Michael has considered going for therapy and taking psychotropic medication but at this point has not taken any action in this regard. He explains that his father is the kind of person who believes that people should take care of their own problems and that Michael is a "good looking boy" who has a lot still going for his and should therefore not need help from others. This has discouraged Michael from seeking help. Since the accident, Michael has attempted to drink several times in order to "relax himself down" He has found that since the accident his tolerance for alcohol has been reduced and he as experienced blackouts. He reports that he has now stopped drinking and has not had a drink for a month. He has attended one AA meeting so far and intends to continue.

Michael continues to live with is parents. He as always lived with them except for short periods when he lived with his brother in South Carolina and a fiancée. He reports that he is independent in terms of Activity of daily living such as doing his own laundry and cleaning his room. However, his mother presents a different picture. He reports that the main difference between how he functions at home is related to his mother paying his bills for him since the accident.

## MENTAL STATUS EXAMINATION

Michael is physically as I have previously described. His eye contact was good but his speech was inhibited, quite soft and mildly slowed. He denies problems with appetite or energy level but complains of problems with sleep due to racing thoughts which he describes as " mind goes". He feels depressed and nervous most of the time but finds relief when he works. His affect was consistently flat and his mood was clearly depressed. He denied hallucinations and illusions. His stream of though was mildly hesitant but he was goal directed and coherent. He indicates that the last time he drank he had thought about suicide. He denies homicidal thought and then adds that he is a "Christian" and tries to help other people. He denies paranoid ideation. His abstract reasoning and general fund of information appears to be near the average range. He was oriented to person, place and time. His remote and recent past memory were in tact. He was able to do simple arithmetic and he was able to perform serial sevens. He was able to recall only one of the three items I asked him to remember for five minutes. He was able to recall five digits forward but only three digits backwards. There does appear to be a defect in short terms memory and concentration and working memory. He denies problems with controlling his hostile impulses. He judgement was poor. When I asked him what he would do if he were the first person in the movies to smell smoke he responds " Warn

09/17/03

everybody Holler." There does appear to be a defect in judgement and executive functioning. He has limited insight into his condition. Based on his mother's description which I will now describe he appears to be unaware or minimizing his poor functioning.

Because Michael has a documented cognitive impairment it was felt prudent to briefly interview his mother, Mary Liller in order to get more information about his functional levels. Mary not only observes him at home but also is also consistently at the job sites since she is an integral part of the family construction business. Mary indicates that Michael has problems with short-term memory, making decisions and depression. She gives an example of his typical short-term memory problems. Recently she told him specifically that she was going out to the store. When she returned Michael was upset that he didn't know where she was because he did not remember the conversation. She keeps an eye on him at the job site. He cannot give directions to other workers but is able to perform simple routine tasks. He makes mistakes that he never made before. For example he recently attached siding to two sides of a house. When he was finished the siding did not line up properly. She notices problems in concentration and he appears to have some minor balance problems on ladders. He is now very attached to both she and his father where previously he was very independent. He appears to be afraid to drive only as far as into town by himself which is approximately ten miles away. He appears to be depressed a good deal of the time and tends to avoid people. He has mood swings when he stays home and does not socialize for weeks at a time. During these particularly depressed periods she cleans his room and does his laundry. At other times his is less depressed and functions somewhat more independently. She consistently pays his bill since the accident. After an eight-month period of sobriety Michael began to drink again after the accident. His reaction to alcohol had changed in that when he drank even small quantities of alcohol he would experience blackout. She is pleased that he is again going to AA meetings and has stopped drinking for a month and intends to continue to abstain. She confirms that Michael's father expresses the feeling that people should be able to manage their own problems without assistance from mental health professionals and that this is a disincentive for Michael to get help.

## Minnesota Multiphasic Personality Inventory - 2 (MMPI-2)

The MMPI-2 is test designed to assess a number of major patterns of personality and emotional disorders. The subject is asked to respond true or false, as it applies to them, to 567 statements. Three validity and ten clinical scales are provided. Supplemental and content scales are also available.

Michael took well over two hours to compete his instrument, which is twice as long as the average person. He took one break to have a cigarette. At the completion he asked why some of the questions were repeated or very similar to each other. Though slow, Michael persisted and produced a valid profile. There is no indication that he attempted to fake "good' or "bad" in this instrument. One must be very cautious in interpreting the clinical scales of persons with documented brain damage.

09/17/03

Items reflecting the effects of the brain damage can also help elevate the other clinical scales, thus presenting spuriously high levels of psychotherapy. In fact, Michael did indorse many items on the Cripe's Neurological Symptoms scale reflective of his brain injury. Scales related to memory, attention/mental control, emotional/beharioral and sleep disturbance were elevated probably reflecting primarily his neurological symptoms. Although he did admit to a significant degree of psychopathology their interpretation will be cautious and tentative, needing clinical varification. The major symptoms he indorses are related to depression and anxiety as well as concern about his mental functioning. He is highly anxious with ruminating thoughts, post traumatic like symptoms and sleep disturbance. He feels sad and discouraged and is dissatisfied with himself. He feels guilty that he cannot manage these feelings. There is noted marked feelings of suspicious, which is not unusual for persons who have suffered brain damage and need clinical developement. There is indication of problems with dealing with authority. Substance abuse and/or dependence are areas of concern.

## Diagnosis

AXIS I   Cognitive disorder NOS, secondary to traumatic brain injury
         Dysthymia vs. Major Depression
         Anxiety Disorder NOS
         Alcohol abuse/dependency in early remission
AXIS II  None
AXIS III Defer to physicians
AXIS IV  Social and Occupational problems
AXIS V   Current: 55

## Summary, Conclusions and Recommendations

Michael Liller is a 26-year-old young man with a high school education who was successfully working in his father's business as a construction foreman. It was his and the families expectation that when his father retired that Michael would take over the business. Michael sustained a serious head injury in an accident on 4/17/02. During rehabilitation he was making a remarkable recovery from his serious injuries and was released with the hope and expectation that he would gradually be able to function at his previously high level. Unfortunately Michael, rather than progressing has not improved and in some ways regressed from the level he achieved upon discharge. He continues to have short-term memory problems and has been unable to resume his supervisory position. In addition, he has developed a chronic depression, which significantly interferes with his ability to function. He has had no professional treatment since he left the rehabilitation agency. He began to drink after a sustained period of sobriety most likely in an unconscious attempt to medicate himself. He is now in early remission from his drinking problem.

09/17/03

Michael was previously able to work as a construction foreman earning at a rate of $12 per hour. His earnings capacity was likely to increase as his skills increased over time and it was his and the families reasonable expectation that his earnings capacity would increase to his fathers level once he took over the business when his father retired. He is now only able to work at a level commensurate with a laborer and $8 per hour. Considering the description of his functioning this level is also questionable and it is likely that if he were not working in a family business he would not be able to earn even at this level. However, for the purpose of this report I will consider the $8 per hour wage an accurate assessment of his current earnings capacity.

## TREATMENT NEEDS

Michael is clearly in need of mental health treatment. He needs a full neurpsychological assessment to determine more accurately the extent of his memory, concentration and executive functioning capacity. He needs psychiatric treatment for his depression and anxiety. This treatment should include psychiatric office visits once a month for a year and once every three-month for two additional years. He will need psychotherapy and cognitive retraining once a week for a year, once every two weeks for another and once a month for the third year. He is likely to need psychotropic medications for a least three years. The goal of this treatment is to at least get him to the functional levels he was at when he left the hospital. Further improvement is possible, particularly on the emotional realm. However, since his cognitive impairments have persisted for over a year there is likely to be little to no additional improvement. The possibility that he would ever again be able to function as a foreman or take over his fathers business is highly speculative.

## OPINION

**It is therefore my opinion, based on a reasonable degree of professional certainty, that Michael Liller, if not for the accident on 4/17/02 had the earnings capacity of $12 per hour working as a construction foreman in his families business. His earnings capacity would have increased to his father's level once he took over the family business. Due to the accident his earnings capacity has been reduced to $8 per hour. He has past and future losses of earnings capacity. He also has the need for substantial additional treatment.**

*[Signature: Charles Cohen]*

Charles Cohen Ph.D.
Psychologist/Vocational Expert